UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARY DORDIESKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) NO. 2:15CV180-PPS/PRC |
| AUSTRIAN AIRLINES, AG, | ) |
| SWISSPORT INTERNATIONAL, LTD, | ) |
| f/k/a Servisair, Inc., SWISSPORT | ) |
| CANADA HANDLING, INC., and | ) |
| SWISSPORT CANADA, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Mary Dordieski alleges that she suffered a horrible injury at the hands of agents of Austrian Airlines when they broke her leg by forcibly stuffing her into an airplane seat when the leg was rigid and unbendable due to *spina bifida*. Ms. Dordieski lives in Crown Point, Indiana. Austrian Airlines is incorporated in Austria and conducts substantial and continuous business within the United States, including in Indiana and Illinois. The injury occurred in Canada. The airline has moved to dismiss the action on *forum non conveniens* grounds.

I'll start with the facts as they are detailed in the second amended complaint which I will accept as true at this point. Dordieski is an adult who suffers from *spina bifida*, as a result of which her right leg is deformed and has always been outstretched and rigid since birth. Mary is confined to a wheelchair and incapable of any self-

support. Mary's mother and caregiver Svetlana Dordieski purchased airline tickets for herself and Mary for an Austrian Airlines flight leaving Chicago, Illinois and bound for Vienna with a final destination of Skopje, Macedonia. To accommodate Mary's disability, Svetlana purchased two tickets in the bulkhead section of the plane – a section that provides more space for passengers.

Mary and Svetlana boarded the flight without incident. But on the way to Austria, the airplane encountered mechanical difficulties and made an emergency landing in Toronto, Canada. The passengers were transported to a Toronto hotel and asked to return to the airport the following day to complete the trip. Mary and Svetlana returned to the airport the next morning to continue their adventure.

For the new flight leaving Toronto, Austrian Airlines did not assign Mary and Svetlana the same seats in the bulkhead section. Instead, the airline issued them boarding passes for regular seats that did not accommodate Mary's disability. This posed a problem given Mary's condition. Svetlana protested that Mary could not be seated in the newly assigned seat given the deformity of her leg. Mary claims that, despite her protests, the airline's employees or agents forced Mary's outstretched leg into the inadequate space, causing it to break.

It is undisputed that Mary's claims for damages are governed by the Convention for the Unification of Certain Rules for International Carriage by Air, known as the Montreal Convention. It is also undisputed that Article 33 of the Convention governs

where plaintiffs can bring claims. The Montreal Convention states that an action for damages "must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination." Convention for the Unification of Certain Rules for International Carriage by Air, Art. 33, ¶1 (May 28, 1999), S. Treaty Doc. No. 106-45 at 27, 2242 U.N.T.S. 350. Paragraph 2 of Article 33 also identifies a fifth jurisdiction, applicable only for passenger death or injury claims, permitting an action to be brought "in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air...." *Id.* at ¶2. It is this latter provision that authorizes Dordieski to bring her claim in this court because she lives here in the Northern District of Indiana.

Austrian Airlines moves to dismiss Mary's complaint based on *forum non conveniens*. The doctrine of *forum non conveniens* applies equally to claims under the Montreal Convention brought in U.S. courts as it does to cases brought in U.S. courts under U.S. laws. *See, e.g., In re Caribbean Airways, S.A.,* 619 F. Supp. 2d 1299, 1316-17 (S.D. Fla. 2007), *aff'd sub nom. Pierre-Louis v. Newyac Corp.,* 584 F. 3d 1052 (11th Cir. 2009). Dismissal under *forum non conveniens* is appropriate if: (1) there is an adequate alternative forum in which the case can be tried, and (2) the relevant private and public

interests favor dismissal. *See Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015); *see also Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). Austrian Airlines argues that Canada is adequate alternative forum and that the private and public interests favor dismissal.

The first issue is whether the motion to dismiss is untimely, as it was filed more than three months *after* the airline filed its answer to the second amended complaint. It is true that Rule 12(b) provides a list of defenses requiring motions to be "made before pleading if a responsive pleading is allowed," and dismissal on *forum non conveniens* grounds is a species of the defense of improper venue, which appears as Rule 12(b)(3) in the list. *Deb v. SIRVA, Inc.*, __ F.3d __, 2016 WL 4245497, *2 (7th Cir. Aug. 11, 2016) ("Subsumed within this last category [improper venue] were the common law principles of forum non conveniens and abstention.").

But Rule 12(b) also says that "[n]o defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion." This reluctance to find waiver is underscored in Rule 12(h)(1)(B), which provides that a party waives a defense listed in Rule 12(b)(2)-(5) by failing to either assert the defense by motion or to include it in a responsive pleading. In this case, the airline's *forum non conveniens* challenge was clearly articulated in its answer and, in particular, in its second affirmative defense. Here's what the airline said in that responsive filing: "This action should be dismissed for the convenience of the parties and/or witnesses and in the

4

interests of justice." [DE 69 at 22.] What's more, in response to Dordieski's venue allegations, the airline answered that it lacked knowledge or information sufficient to form a belief as to the truth or falsity of the allegations, and so denied them. [*Id.* at 3.] In the face of these timely challenges to Dordieski's venue selection in the airline's answer, and in view of the airline's earlier assertion of a *forum non conveniens* motion in response to each of Dordieski's two previous pleadings [DE 14, DE 37], I am not persuaded that the timing of the current motion can be viewed as a waiver.

So it's on to the *forum non conveniens* determination. Here's the broad outline of the doctrine as explained by the Supreme Court:

> A federal court has discretion to dismiss a case on the ground of forum non conveniens when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (internal citations omitted). As the Seventh Circuit reminded us a couple weeks ago, a plaintiff's choice of forum should seldom be disturbed, unless the balance of convenience falls strongly in defendant's favor. *Deb*, 2016 WL 4245497, *2, citing *Gulf Oil v. Gilbert*, 330 U.S 501, 504 (1947). A dismissal under the doctrine of *forum non conveniens* is characterized as an "exceptional one" that should be used "sparingly." *Id.* It is for this reason that defendants who invoke *forum non conveniens* bear a heavy burden, particularly when the plaintiff's choice is his home forum. *Id.* at *3. The defendant's

5

heavy burden takes into consideration the fact that granting such a motion usually launches a plaintiff into a foreign court and the logistical hassles that come with it.

The Seventh Circuit breaks down an adequate alternative forum into a "two-part inquiry: availability and adequacy." *Kamel,* 108 F.3d at 802. *Availability* is when "all parties are amenable to process and are within the forum's jurisdiction." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund,* 589 F.3d 417, 419 (7th Cir. 2009). *Adequacy* requires that a forum provide the plaintiff with a "fair hearing to obtain some remedy for the alleged wrong." *Id.*

As I indicated, Article 33 of the Montreal Convention governs where the plaintiff can bring her claims. Article 33 identifies five forums that have jurisdiction over a passenger's claim:

(1) the court of domicile of the carrier,

(2) the location of the carrier's principal place of business,

(3) where the carrier has a place of business through which the contract was made,

(4) the court at the place of destination, or

(5) the principal and permanent residence of the passenger if the carrier operates passenger air services to or from that country.

Montreal Convention, Art. 33, ¶¶ 1, 2. The United States has jurisdiction via forum option (5) because Mary's principal place of residence is the United States and Austrian Airlines conducts flights to and from the United States.

Austrian Airlines argues that Canada has jurisdiction via forum option (3) because Austrian Airlines created a contract with the Dordieskis in Canada when it "issued [Mary] a new boarding pass for a new and different flight than the flight she was originally on." [DE 81 at 7.] The airline contends that the boarding pass was a "contract for carriage" under the Montreal Convention. [*Id*.] Mary takes the position that the new boarding pass did not create a new contract, but merely represented a modification of the original contract. [DE 82 at 14.] I think Mary has the better of the argument.

The contract between Mary (or Svetlana, of which Mary was the third-party beneficiary) and Austrian Airlines was for carriage from Chicago to Vienna. The means by which the contract was effectuated had to be altered when the emergency stop in Toronto was required. But Mary was not issued a new ticket. She did not pay for a new flight. Svetlana bought the original tickets while she was in the United States, from a travel agent in New Jersey. This means that the contract for the original ticket from Chicago to Austria occurred in the United States. The flight from Canada to Vienna was merely a fulfillment of the parties' contract for the original ticket, rather than a new and separate contract. The unforeseen stopover in Canada, occasioned by circumstances beyond Svetlana's and Mary's control and not of their choosing, did not result in a new contract.

The provisions Austrian Airlines cites from Article 3 of the Montreal Convention do not define "contract for carriage" or otherwise describe what constitutes a

passenger's contract with an airline. The passage merely describes documentation required of an airline indicating the places of departure and destination, and sometimes "stopping places" en route. [DE 81 at 8.] Even this passage provides that non-compliance "shall not affect the existence or the validity of the contract of carriage." [*Id.* at 9, quoting ¶5.] And the airline's reliance on the boarding pass as a new contract is troubling. A bedrock principle of contract law is that a valid contract requires mutual assent. *Utley v. Donaldson,* 94 U.S. 29, 47 (1876). The boarding pass assigned a new seat to which the Dordieskis certainly did not agree, and which was — if one believes the complaint — not only protested against but literally forced on Mary.

The airline's argument that a new contract was made in Toronto is unpersuasive. At the very least, it is certainly not so without question that it meets their heavy burden. Without such a new contract, Canada is not a forum with jurisdiction over Dordieski's claim. In that event, it is not an available or adequate forum for purposes of *non conveniens* analysis.

But let's suppose I am wrong about this. The decision would then turn on the balance of the relative convenience of Canada and Indiana as forums for the litigation, but with a thumb on the scale in favor of Indiana, because it is Dordieski's home and her choice of forum as plaintiff. As noted above, the Supreme Court has held that there is a strong presumption in favor of the plaintiff's choice of forum and it may be overcome "only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno,* 102 U.S. 252, 266 (1981). As the

8

Seventh Circuit has noted: "Both *Gulf Oil* and *Piper Aircraft* state there is a strong preference for conducting the litigation in the plaintiff's chosen forum, and that only rare circumstances make honoring this choice inequitable. 'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 553 (7th Cir. 2001), quoting *Gulf Oil*, 330 U.S. at 508. So I must give deference to Mary's choice of forum when analyzing the public and private interests.

The private interests examined in a *forum on conveniens* analysis include: (1) the relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling witnesses, (3) the cost of obtaining attendance of willing witnesses, and (4) all other practical problems that would prevent trial of a case from being easy, expeditious, and inexpensive. *Gulf Oil*, 330 U.S. at 508. Austrian Airlines argues that private interests (1) and (2) favor litigation in Canada because key witnesses and evidence are in Canada. Austrian Airlines merely speculates about the location of evidence and witnesses rather than producing any proof, such as the flight manifest, which contains actual information about where the crew and other passengers may reside. Whatever the difficulty of access to witnesses in Canada, on the facts of this case it will fall equally upon the two parties. And Dordieski, who as the plaintiff has the burden of proof, has chosen to litigate in the United States with whatever evidentiary burden that entails.

9

The cost of transporting witnesses is also a factor I must take into consideration. But it is hard to escape the fact that the very business of Austrian Airlines is transporting people. So it can spread its costs to its consumers, whereas Mary is disabled and does not have an income. Moreover, Mary suffers from *spina bifida.* It seems especially cruel to force her to shoulder the unnecessary burden for her to travel to a foreign country to litigate her case. Issues of expense and inconvenience clearly tilt in favor of the disabled individual plaintiff over the corporate defendant which is in the business of international transportation. The relative weight of the private interests of the parties favors jurisdiction in the Northern District of Indiana.

The public interest factors include the local interest in having localized controversies decided at home, the unfairness of burdening citizens in an unrelated forum with jury duty, and judicial economy. *Kamel*, 108 F.3d at 803. Mary was not a Canadian tourist. Neither she nor Austrian Airlines intended to land at a Canadian airport. That the parties were in Canada was unintended and unforeseen. Even if Canada had jurisdiction under the Montreal Convention, the Canadian courts need not be burdened with litigating an incident between foreign parties that occurred in Canada by mere happenstance when the plaintiff has filed in her own local forum, which has an interest in resolving its citizen's claims.

The United States has the strongest ties to this case because (1) Mary is a resident and citizen of the United States, (2) the original flight departed from Chicago, (3) Austrian Airlines conducts substantial and continuous business in the United States,

including Indiana and Illinois, and (4) the ticket was contracted for in the United States. The public interest favors jurisdiction in the Northern District of Indiana.

I recognize that the converse may also be true: it is probably inconvenient for Austrian Airlines to defend the case in the United States. But let's be pragmatic. Which one of these parties is in a better position to litigate in a foreign country? A multi-national transportation company who is accustomed to business dealings and litigation around the world, on the one hand, or Mary, a wheelchair-bound woman afflicted with *spina bifida* who has no income, on the other? It's a fair question to ask since the Seventh Circuit has instructed me to consider "practical problems" when deciding *forum non conveniens* issues. *See ISI Int'l, Inc.* 256 F.3d at 553. And to ask the question is to supply the answer. For all these reasons, I am not persuaded that Austrian Airlines has met its high burden in attempting to overcome Mary's forum selection under the doctrine of *forum non conveniens.*

ACCORDINGLY:

Defendant Austrian Airlines' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to *Forum Non Conveniens* [DE 79] is DENIED.

SO ORDERED.

ENTERED: August 23, 2016.

                                       /s/ Philip P. Simon
                                       PHILIP P. SIMON, CHIEF JUDGE
                                       UNITED STATES DISTRICT COURT